SAVINGS-BANK v. GETCHELL.

A written acknowledgment of A, who is in the occupation of land, that he holds it as tenant of B, does not raise a presumption of law that he promises to pay rent, nor transfer from B to A the burden of proof on the question of fact whether they understand rent is to be paid. A promise to pay rent in such a case, implied from occupation and tenancy, is an inference of fact.

ASSUMPSIT, for use and occupation of land. The plaintiff, having a judgment on a mortgage of the land against one J. G., gave a writ of possession for service to an officer, who, with an agent of the plaintiff, demanded possession of the defendant who occupied the land. The plaintiff's evidence tended to prove that the defendant objected to giving possession because he was holding under a lease for three years from J. G., for which he had paid the rent in advance; and though his lease was after the mortgage, he claimed that the plaintiff's security was ample, the rent of the other real estate sufficient to pay the interest on the plaintiff's debt, and that in justice he ought not to pay rent; that the plaintiff in part admitted this, but claimed the right to take possession, and to have rent paid, if the bank demanded the rent, from the first day of May, especially if the land was redeemed by subsequent mortgagees, and the bank was made to account for rent; that after a good deal of talk, the agent and the defendant went to the defendant's attorney, and under a description of the land, the defendant signed the following: " I acknowledge that I hold the above premises as tenant of the Savings-Bank for the County of Strafford, without prejudice to my right to commence a bill in equity. May 1, 1876;" that the defendant has not commenced a bill in equity, and the plaintiff, March 23, 1877, conveyed by quitclaim deed its interest in the mortgage and lands described in it, and rent due, to one E. C. Fitz, who is the plaintiff in interest; and that he demanded the rent before suit, which the defendant refused to pay.

Subject to the plaintiff's exception, the defendant was allowed to give in evidence a lease of the real estate in question from J. G. to himself for three years, and to prove that he had paid the rent in advance; and to testify about the conversation and understanding that was entered into by the plaintiff's agent and himself as to the payment of rent at the time the defendant signed the acknowledgment. The plaintiff had previously examined its agent as to the same, without objection, as a part of its case.

The defendant's evidence tended to show in substance that he claimed, when the plaintiff demanded the possession, that it was unjust to require him to pay rent; that the plaintiff's agent treated him kindly, and said that he could make no formal agreement that the defendant should not pay rent, but it might run along and see how it came out; that he made no agreement to pay rent, but told the agent that when the plaintiff demanded rent he must either pay rent from that time or go out; that he had no understanding that he was to pay rent from the first day of May, but that he was to pay from the time that the plaintiff should make a demand on him to do so, or go out. The plaintiff gave some evidence tending to show that, December 13, 1876, the bank made a demand that rent should be paid, and the defendant in reply to this gave evidence tending to show that no demand was made, and if one was made, that the matter was discussed again, and the demand waived.

The court instructed the jury that they would find upon all the evidence in the case what the understanding and agreement of the parties was as to the payment of rent by the defendant; that to make an agreement or an understanding, the minds of the parties must meet, should mutually assent that rent was or was not to be paid; that if the contract was that the defendant was to pay rent after a demand, he would not be liable unless a demand was made.

The plaintiff requested the following instructions: It being proved and admitted that the defendant signed an agreement to become the tenant of the plaintiff, the defendant cannot show by parol that it was agreed, at the time of making the written contract, that he should not be liable to pay rent. The tenancy being proved to exist, the law implies an agreement that he should pay a reasonable rent, and he is liable to pay rent unless it appears that it was agreed that he should not be liable to pay rent. The agreement of the defendant to become tenant is *prima facie* evidence of an agreement to pay a reasonable rent for the use of the premises. These instructions the court declined to give: and to those given, and the refusal to give those requested, the plaintiff excepted. Verdict for the defendant.

*Wiggin & Fernald*, for the plaintiff.

The plaintiff's title to the premises is established. The defendant admitted it, and agreed to hold the premises as tenant of the plaintiff, with a reservation which he has never availed himself of. The fact then being proved and admitted that the defendant occupied and used the plaintiff's real estate as tenant during the time for which the claim is made in the writ, the law implies a contract to pay the plaintiff a reasonable compensation for the use of it. This implied contract is not an inference of fact as to the intent and understanding of the parties, but arises from the general elementary principle of law, that, whenever a person receives of another anything of value to him, the law presumes an undertaking to pay its fair value; " which, though never perhaps actually made, yet arises from the general implication and intendment of the courts of judicature that every man hath engaged to perform what his duty or justice requires." 3 Bl. Com. 161; *Sceva* v. *True*, 53 N. H. 627. The principle has been applied to claims for labor done *(Britton* v. *Turner*, 6 N. H. 481; *Goodwin* v. *Union Screw Co.*, 34 N. H. 378; *Christie* v. *Sawyer*, 44 N. H. 298; *Corey* v. *Corey*, 19 Pick. 29), for tolls due *(Proprietors* v. *Taylor*, 6 N. H. 499), for newspaper furnished *(Fogg* v. *Atheneum*, 44 N. H. 115), for materials furnished under a special contract, but not in compliance with it *(Horn* v. *Batchelder*, 41 N. H. 86). In these cases, cited as illustrations, there was no contract in fact between the parties. In most of them there was no assent to the contract implied on the part of the defendant, but an emphatic dissent. The

same principle applies, both upon reason and authority, to claims for the use and occupation of real estate. Taylor's Landlord and Tenant, s. 655; *Stafford* v. *Till*, 4 Bing. 75; *Beverley* v. *Lincoln*, 6 A. & E. 827; *Howard* v. *Shaw*, 8 Mee. & W. 118; *Dwight* v. *Cutler*, 3 Mich. 566; *Hogsett* v. *Ellis*, 17 Mich. 351; *Osgood* v. *Dewey*, 13 Johns. 240; *Stebbins* v. *Peck*, 8 Gray 553; *M. H. Life Ins. Co.* v. *Wilson*, 10 Met. 126; *Alton* v. *Pickering*, 9 N. H. 494; *Mussey* v. *Holt*, 24 N. H. 248; *Woodbury* v. *Woodbury*, 47 N. H. 11; *Carpenter* v. *United States*, 17 Wall. 489.

The defendant must show a valid agreement on the part of the plaintiff not to claim rent, at least a gift of the use of the premises, to relieve him from the legal obligation to pay a reasonable rent. In *Bickford* v. *Dane*, 58 N. H. 185, the defendant's husband made a contract with the plaintiff to make repairs on the defendant's house. The plaintiff charged the work to the husband, but, having ascertained afterwards that the defendant owned the house, brought a suit against her, upon the ground that her husband acted as her agent in making the contract. The plaintiff made the contract with the husband, and gave credit to him, and he had no claim upon the defendant unless her husband was in fact acting as her agent in making it. There was no presumption of law that he was her agent. The question was, Which was liable for the repairs, the defendant, or her husband? That case would have been parallel with the present case if the plaintiff had made the repairs upon the request or procurement of the defendant herself, without the intervention of her husband, and the question had been whether or not he should recover for them. Under such a state of facts the instructions there given would have been appropriate. The law that a contract to pay may be implied, in the absence of an express or tacit agreement to pay, has not been abrogated in this state. The question is entirely distinct from that of presumptions of fact, or the burden of proof in cases where the liability of the defendant rests entirely upon his agreement, and is not a legal inference from facts proved. The authorities are uniform that the law implies a promise of the defendant to pay for a benefit by him requested and received.

*Marston & Eastman*, for the defendant.

The plaintiff claims that the law conclusively presumes a promise to pay rent, from the fact of occupation and acknowledgment of tenancy. An implied promise arises, if at all, from the obligation of every man to do what justice requires. Here the defendant, at and ever after the time when he acknowledged his tenancy, claimed that he ought not in justice to pay rent because he had paid it in advance, and he refused to pay again or to promise to pay. The law will not imply a promise of any person against his own express declaration. *Whiting* v. *Sullivan*, 7 Mass. 107; *Jewett* v. *Somerset*,

1 Me. 125. The plaintiff could of course submit to the equitable claim of the defendant to occupy without payment of rent, if he chose to do so, either absolutely or conditionally; and the question submitted to the jury was, what was the understanding and agreement of the parties as to whether or not the defendant should pay rent, and this at the very time when he signed the acknowledgment of tenancy. The charge of the court, considered with reference to the facts proved, was right. A promise, whether express or implied, is a fact, and to be proved like any other fact, and the doctrine of legal presumption has been pretty effectually swept away in this state. *Bickford* v. *Dane*, 58 N. H. 185; *Lisbon* v. *Lyman*, 49 N. H. 553; *Gray* v. *Jackson*, 51 N. H. 9; *Bundy* v. *Hyde*, 50 N. H. 116; *State* v. *Hodge*, 50 N. H. 510.

DOE, C. J. The defendant's written acknowledgment that he held the land as tenant of the plaintiff without prejudice to the defendant's right to bring a suit in equity, is not conclusive evidence of a promise to pay rent. All admission of the plaintiff's title, that might affect the defendant's claim in a suit in equity, was expressly withheld. The defendant was not to be estopped by his tenancy to assert his own rights, whatever they were, in such a suit. The acknowledgment contains no allusion to rent. And it might be argued that its silence is significant; that if the paper had been intended as evidence of the defendant's obligation to pay rent, it would have mentioned the subject, and disclosed the purpose for which it was written, and probably would have stated how much rent was to be paid, or indicated how the amount could be ascertained. It was apparently intended to be evidence, not of such an obligation, but of an existing relation of landlord and tenant, acknowledged by the defendant at the plaintiff's request, for some purpose of the plaintiff not disclosed in the writing, and consistent with an understanding that there was to be no rent. And as the legal construction of the writing does not make it a contract on the subject of rent, parol evidence is admissible on the question whether there was a contract on that subject.

The plaintiff's evidence shows that the acknowledgment of tenancy was made to enable the plaintiff to complete the foreclosure of a mortgage, and leaves it doubtful at least whether there was an understanding that rent was to be paid: while the defendant's evidence goes to disprove such an understanding. From the defendant's occupation and acknowledged tenancy, the law does not imply a promise to pay rent. The question whether there was such a promise, is a question of fact. There might be a question whether there was evidence on which the jury could fairly find a promise, and whether a verdict for either party was against the evidence: but no such question is raised in this case.

The practice of shifting the burden of proof by a legal presumption is largely abandoned in this state. It often materially en-

croached upon the province of the jury, but caused less injustice when parties were not allowed to testify than it would now. When courts assumed the power of excluding the testimony of the parties for reasons alleged to have been satisfactory in a certain state of society, they did not hesitate, by legal presumptions and other measures, to extensively control the jury in the decision of questions of fact. The tendency in this state is towards a correction of those errors, and the establishment and observance of the true line between law and fact, and between the duty of the court and the duty of the jury. That line being applied to this case, there is no presumption of law relieving the plaintiff of the burden of proof, and laying it upon the defendant. If the plaintiff's claim of a *prima facie* case means that he introduced sufficient evidence to prevent a nonsuit; or that, if the defendant had offered no evidence, a verdict against the plaintiff should have been set aside as against the evidence, there is now no occasion to examine the claim. If it means that the plaintiff's evidence shifted the burden of proof, the court at the trial rightly declined to sustain it.

*Judgment on the verdict.*

BINGHAM, J., did not sit: the others concurred.